IN THE UNITES STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER RAE GEORGE,<br>An Incapacitated Person, by<br>RAYMOND G. GEORGE and<br>SUSAN M. GEORGE,<br>Guardians,<br>　　Plaintiffs<br><br>v.<br><br><br>CITY OF ERIE,<br>JOYCE SAVACCHIO,<br>PAUL DEDIONISIO,<br>RICHARD SZYCHOWSKI,<br>DAVID VAN BUSKIRK,<br>RICHARD CRAWFORD,<br>PATRICK DURKIN,<br>GREGORY T. DILORETO and<br>JOHN DOE,<br>　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br><br><br><br>No. CA 04 – 77 E<br><br><br><br><br><br><br><br><br><br>TRIAL BY JURY OF TWELVE (12)<br>JURORS DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
CONCISE STATEMENT OF MATERIAL FACTS**

AND NOW, pursuant to Local Rule of Civil Procedure 56.1C1, the Plaintiffs, Jennifer Rae George, an incapacitated person, by Raymond G. George and Susan M. George, Guardians, by and through their attorney, Alan Natalie, Esquire, file this Response to Defendants' Concise Statement of Material Facts, respectfully representing as follows:

1

1. Paragraph 1 of Defendants' Statement summarizes the Appendix of Exhibits filed contemporaneously with their Statement and their Motion for Summary Judgment. No response to the summary in paragraph 1 is required of Plaintiffs, however, Plaintiffs admits the records produced by the Defendants regarding police procedures and portions of Defendant DiLoreto's file are material.

2. Paragraph 2 is undisputed and material.

3. Paragraph 3 contains argument asserting DiLoreto's training was "extensive" and "substantial" which is disputed. The remaining facts of Paragraph 2 are undisputed and material.

4. Paragraph 4 is undisputed and material.

5. Paragraph 5 is undisputed and material.

6. Paragraph 6 contains argument asserting a citizen complainant possessed "a long arrest and prison record" at the time he complained about a driving incident purportedly involving DiLoreto. The argumentative assertions are disputed. The remaining facts of Paragraph 5 is undisputed and material.

7. Paragraph 7 is undisputed and material assuming, *arguendo*, that all incidents involving DiLoreto have been secured and produced by the Defendants to their counsel.

8. Paragraph 8 is undisputed and material.

9. Paragraph 9 is undisputed and material.

10. Paragraph 10 is undisputed and material.

11. Paragraph 11 is undisputed and material.

12. Paragraph 12 is undisputed and material.

13. Paragraph 13 is undisputed and material.

14. Paragraph 14 is disputed and immaterial.

15. Paragraph 15 contains a disputed argument asserting DiLoreto *"was not able to stop within an assured clear distance ahead"* implying DiLoreto's failure to stop was beyond his control. (emphasis added) The remaining facts of Paragraph 15 are undisputed and material.

16. Paragraph 16 is undisputed and material.

## PLAINTIFFS' RESPONSIVE CONCISE STATEMENT OF MATERIAL FACTS

1. An Appendix of Exhibits ("Plaintiffs' Appendix") is being filed contemporaneously herewith and the exhibits are referred to herein by number. For the same reasons cited in Defendants' Concise Statement at paragraph 1, the Erie Police Bureau records attached as exhibits to the Appendix, or otherwise referred to in this Statement, are admissible pursuant to Fed. R. Evid. 803 (8). Further, as noted by Defendants, not all records relied upon by Plaintiffs and referred to herein are not reproduced in Plaintiffs' Appendix, but were supplied by Defendants in discovery and served on all parties. Finally, reference is made herein to the exhibits reproduced in the Defendants' respective Appendices, filed contemporaneously with their Motions for Summary Judgment.

2. Erie Police Bureau records reflect several incidents in which complaints were made about DiLoreto's operation of a police vehicle, material and relevant to Complaint paragraphs 42 (a) to (c), and other instances of misuse of a motor vehicle for purposes of civilian harassment, relevant and material to Complaint paragraph 42 (d). In particular, on June 17, 1999, after completing a response to a call, DiLoreto, operating police vehicle unit B-

1, "saw fit to hurry in with flashing lights and Relco on. Car B-1 did pass cars as they moved out of his way." (Plaintiffs Appendix at Exhibit "A") Subsequent reference to this vehicle operation incident describes the incident as a "reckless operation of Bureau equipment." (Plaintiffs Appendix at Exhibit "B")

3. DiLoreto's next motor vehicle operation incident occurred on June 23, 1999. (Defendants' Appendix at Exhibit "F"). DiLoreto was issued an employee warning for "carelessness", when he drove his vehicle "at a careless speed en route to a loud music call, est. speed 50 mph+." (*Id.*). DiLoreto concurred with his employer's statement. (*Id.*).

4. DiLoreto also misused his police vehicle to harass civilian motorists. On June 8, 1999, he initiated a traffic stop of one Jeffrey C. Russell without cause, according to Mr. Russell's citizen complaint. During the traffic stop, DiLoreto verbally harassed the complainant with references to the complainant's apparent sexual orientation, as he was motoring in an urban area apparently frequented by homosexuals. Only verbal warnings were given to DiLoreto by supervisory staff to choose his language more carefully when interacting with the public. (Plaintiffs Appendix at Exhibit "C").

5. Another example of DiLoreto's misuse of a police vehicle was his encounter with a female at a local convenience store, and his subsequent following of the female using his police vehicle, in a harassing manner, which included a threat to pull her for an apparent sexual encounter, according to her citizen complaint and the accompanying internal police investigation. (Plaintiffs Appendix at Exhibit "D"). Although this incident occurred on September 1, 2001, approximately four and one-half months following DiLoreto's motor vehicle collision with the Plaintiff, it is illustrative and confirming of

his habit and practice then existing, Fed. R. Evid. 406, as well as his vehicle misuse propensities known to his municipal employer. Complaint, par. 42 (d).

6. By reputation, DiLoreto was referred to as "NASCAR" and would perform "burnouts" with his police vehicle. By reputation, his fellow officers did not want to be with him, and commented frequently about his dangerous driving habits. (Plaintiff's Appendix at Exhibits "E" and "F"). This is evidence of DiLoreto's habits and practices. Fed. R. Evid. 406. In addition, this reputation evidence is admissible under Fed. R. Evid. 405 (a) as character evidence offered to prove absence of mistake or accident, pursuant to Fed. R. Evid. 404 (b), in particular, since the Defendants assert the mere happening of a motor vehicle accident as a defense to this claim under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983.

7. In addition to specific references to exhibits in the Plaintiffs' Appendix, the material facts set forth in paragraphs 8 through 24 below, concerning the happening of the motor vehicle collision at issue, are contained in the following documents: Defendant DiLoreto's Appendix (Police Accident Report); Defendants' Concise Statement of Material Facts at paragraphs 9 through 13; Plaintiffs' Appendix at Exhibits "G" (Transcript of Traffic Court Proceeding, September 27, 2001; Plaintiffs' Appendix at Exhibit "H" (Transcript of Summary Appeal Hearing, January 31, 2002).

8. The incident giving rise to this action occurred on or about April 13, 2001, at approximately 2:37 a.m.

9. The incident giving rise to this action occurred at or near the intersection of East Fourteenth and Parade Streets in the City of Erie, Commonwealth of Pennsylvania.

10. At the subject intersection, there exist two northbound traffic lanes and two southbound traffic lanes.

11. At the subject intersection, there exists a traffic light.

12. Just prior to the incident giving rise to this action, Jennifer George was operating a motor vehicle in the southbound, inside lane of Parade Street.

13. Just prior to the incident giving rise to this action, DiLoreto was operating a police cruiser owned by Erie. DiLoreto was responding to a "fight call" at a location approximately six city blocks from his location at or near East Sixteenth and Parade Streets. DiLoreto was "in no hurry" as he was responding as a back-up to other responding officers, accordingly, no emergency response was required of DiLoreto, therefore, he had no reason to violate the Pennsylvania Rules of the Road or the Pennsylvania Emergency Vehicle Doctrine.

14. At all times relevant to the instant action, DiLoreto was operating the police cruiser as an agent, servant, and/or employee of Erie, and acted within that employment relationship.

15. Just prior to the incident giving rise to this action, DiLoreto was operating the police cruiser in the northbound, inside lane of Parade Street, leaving a railroad underpass and approaching the crest of a hill as he approached the area of the subject incident from the south.

16. Just prior to the incident giving rise to this action, DiLoreto was operating the police cruiser at a speed of approximately 63 miles per hour. [Plaintiffs' Appendix at Exhibit "I" (Affidavit and Expert Report of James D. Madden, P.E.)]

17. At the time giving rise to this action, the speed limit applicable to the traffic lanes of Parade Street was 25 miles per hour.

18. Just prior to the incident giving rise to this action, DiLoreto was operating the police cruiser without having activated the police cruiser's emergency equipment, in particular, the audible signal (siren) or visual signals (rack lights).

19. Just prior to the incident giving rise to this action, Jennifer George turned the vehicle she was operating from the southbound, inside lane of Parade Street onto the eastbound lane of East Fourteenth Street, at which time the traffic light directed her lane of travel indicated "green."

20. At the time Jennifer George started her turn from Parade Street onto East Fourteenth Street, the police cruiser DiLoreto was operating was a distance away and under the railroad underpass so as to allow Jennifer George to make her left turn with safety, assuming the police cruiser had been not been operating by DiLoreto in the manner described above. [Plaintiffs' Appendix at Exhibit "I" (Affidavit and Expert Report of James D. Madden, P.E.)]

21. DiLoreto delayed in his response to the George vehicle legally and responsibly turning left at the subject intersection. [Plaintiffs' Appendix at Exhibit "I" (Affidavit and Expert Report of James D. Madden, P.E.)]

22. The police cruiser operated by DiLoreto struck the vehicle operated by Jennifer George in the intersection of East Fourteenth and Parade Streets.

23. The subject accident was caused by the speed of the DiLoreto vehicle and the delayed response of DiLoreto to the left-turning George vehicle. If the DiLoreto vehicle had been traveling at a reasonable speed or if DiLoreto had responded reasonably to the left-turning George vehicle, the subject accident would not have occurred. [Plaintiffs' Appendix at Exhibit "I" (Affidavit and Expert Report of James D. Madden, P.E.)]

24. As a result of the incident giving rise to this action, Jennifer George sustained serious and disabling injuries.

25. In one of his own criminal court filings prepared prior to his voluntary termination, DiLoreto asserted that similar vehicular operation, in the presence of other vehicles and traffic controls, constitutes reckless behavior. [Plaintiffs' Appendix at Exhibit "J" (Police Criminal Complaint, Commonwealth vs. John Marion Butler, filed by then Officer Gregory DiLoreto on July 21, 2001.)]

26. By his own disciplinary record, DiLoreto was aware of the danger that he, and other officers behaving like him, pose to the traveling public by traveling at excessive rates of speeds on city streets. [Defendants' Appendix at Exhibits "E", "F", "G" and "I"].

27. The City of Erie has established a practice, policy or custom of failing to document, investigate, supervise and/or discipline officers following motor vehicle crashes involving police vehicles, which said policy failed to deter the type of conduct exhibited by DiLoreto on the day of the motor vehicle incident. [Plaintiffs' Appendix at Exhibit "K" (Affidavit and Expert Report of Geoffrey P. Alpert, Ph.D.)]

28. The City of Erie, in its handling and deficient supervisory response to crashes involving police vehicles, violates its own written Bureau of Police Special Order 1-95, mandating supervisory management of investigation of police vehicle accidents for purposes of "determining the need for any remedial training." [Plaintiffs' Appendix at Exhibit "K" (Affidavit and Expert Report of Geoffrey P. Alpert, Ph.D.)]

29. Bureau of Police crash data for the years 1996 through 2004 shows a clear trend that the City of Erie ignores professional standards of police policy formulation, management and enforcement regarding police vehicle operation and supervisory responses to police

vehicle accidents, evidencing a lack of concern to the traveling public. [Plaintiffs' Appendix at Exhibit "K" (Affidavit and Expert Report of Geoffrey P. Alpert, Ph.D.)]

                                    Respectfully submitted,

By _____
                                    Alan Natalie, Esquire
                                    Attorney for Plaintiffs
                                    PA I.D. No. 55847
                                    504 State Street, Suite 300
                                    Erie, Pennsylvania 16501
                                    (814) 455-7467

IN THE UNITES STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER RAE GEORGE,<br>An Incapacitated Person, by<br>RAYMOND G. GEORGE and<br>SUSAN M. GEORGE,<br>Guardians,<br>    Plaintiffs<br><br>v.<br><br>CITY OF ERIE, *et al.*,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. CA 04 – 77 E<br>)<br>)<br>)<br>)   TRIAL BY JURY OF TWELVE (12)<br>)   JURORS DEMANDED |

## **CERTIFICATE OF SERVICE**

    I hereby certify that I served true and correct copies of the foregoing Plaintiffs' Response to Defendants' Concise Statement of Material Facts to the following listed below this 22nd day of July, 2005, by United States first class mail, postage prepaid:

Scott Dunlop, Esquire
Suite 2900, 600 Grant Street
Pittsburgh, PA  15219

David L. Haber, Esquire
602 Law and Finance Bldg.
429 Fourth Avenue
Pittsburgh, PA  15219-1503

                                                  Respectfully submitted,

                                                  By _____
                                                        Alan Natalie, Esquire
                                                        Attorney for Plaintiffs